IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOSEPH J. ROTH,

      **Petitioner,**

  **v.**                           **Case No. 2:16-cv-189**

WARDEN, ROSS CORRECTIONAL      **CHIEF JUDGE EDMUND A. SARGUS, JR.**
    INSTITUTION,               **Magistrate Judge Kemp**

      **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, Joseph J. Roth, an inmate at Ross Correctional Institution ("RCI"), filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the petition (Doc. 1) and the Respondent's return of writ (Doc. 6). Petitioner requested and was granted two extensions of time within which to file his traverse, which was due to be filed on or before October 8, 2016. Petitioner has not filed a traverse. Thus, the case is ripe for decision. For the foregoing reasons, it will be recommended that the petition be **DENIED** and this case be **DISMISSED**.

### I. Factual Background

The facts of the case are summarized by the Muskingum County, Ohio, Court of Appeals:

> {¶ 2} On January 10, 2013, Officer Scott Caldwell of the Dresden Police Department, while patrolling a location known for illegal drug activity, observed a car drive through the area slowly and stop near the suspect location. Officer Caldwell returned to the area five minutes later, and observed a group of people in the middle of the street. He then witnessed a bloody, black male run away from the others. The black male was later

identified as Jeff Body, the victim in this case. Officer Caldwell notified the Muskingum County Sheriff's Office, requesting assistance.

{¶ 3} Jeff Body testified at trial herein, he went to Amy Johnson's house in the early morning hours of January 10, 2013, after she contacted him numerous times about coming to her home. Shortly after his arrival, Body heard a loud noise and four men with masks burst into the bedroom. Body tried to run, but at least one of the men with masks had a gun. Body was beaten inside the residence, and again as he exited the residence. He testified the beating only stopped once the police arrived. Body testified his wallet and vehicle were stolen during the altercation.

{¶ 4} In the early morning hours of January 10, 2013, Deputy Ryan Williams of the Muskingum County Sheriff's Office arrested Appellant in the victim's car a short distance from the scene. Deputy Williams observed two masks and a pair of gloves in the car. The victim testified the mask and gloves did not belong to him, and were not in the car when he was driving.

{¶ 5} Amy Johnson testified she had been in contact with Adam Poulton, and Poulton had discussed robbing Body on several occasions. Johnson identified all three men involved in the robbery, including Appellant. She explained Adam Poulton beat Body, and Appellant demanded she give him the "F-ing keys."

{¶ 6} Chad Bocook, another defendant, testified he was with Appellant during the planning stages earlier in the night and throughout the commission of the offense. He testified he rode in the car with Appellant to Johnson's house. He indicated Adam Poulton had a .40 caliber Smith and Wesson to be used as Poulton and Appellant robbed the victim. He further testified Appellant stole the victim's car.

State v. Roth, 2014 WL 4802841 (Muskingum Cty. Sept. 25, 2014). The factual narratives set out by the state court are presumed to be correct. 28 U.S.C. §2254(e)(1).

## II.  Procedural History

### A.  Trial Court Proceedings

Mr. Roth was indicted by a Muskingum County, Ohio, grand jury on a the following charges: first degree felony aggravated robbery with a firearm specification; O.R.C. §2911.01(A)(1); first degree felony aggravated robbery with a firearm specification; O.R.C. §2911.01(A)(3); second degree felony aggravated robbery with a firearm specification; O.R.C. §2903.11(A)(1); fourth degree felony felonious assault with a firearm specification; O.R.C. §2913.02(A)(1); fourth degree felony theft of a motor vehicle; O.R.C. §2913.02(A)(1); and fifth degree felony theft; O.R.C. §2913.02(A)(1).  He pleaded not guilty and the case went to trial.  When the state rested its case, Mr. Roth's counsel moved for acquittal pursuant to Ohio Crim. R. 29. Tr. Vol. 4 at 301-302.

Mr. Roth was convicted by the jury of aggravated robbery, a felony of the first degree, in violation of R.C. 2911.01(A)(1); theft, a felony of the fourth degree, in violation of R.C. 2913.02(A)(1); and theft, a felony of the fifth degree, in violation of R.C. 2913.02(A)(1). At sentencing, the trial court merged the aggravated robbery and fifth degree theft charges, sentencing Petitioner on the aggravated robbery count. He was sentenced to an aggregate prison term of eight years. Doc. 6, Ex. 5.  On August 5, 2013, Mr. Roth filed a pro se motion for acquittal under Ohio Crim. R. 29( C), which the trial court denied on the same day as untimely.  Doc. 6, Ex. 6-7.  Respondent submitted the complete trial transcripts as exhibits to the Return of Writ.  Doc. 6-2- 6-6.

3

**B. Direct Appeal**

Mr. Roth attempted to appeal by filing a pro se notice of appeal in Ohio's Fifth District Court of Appeals. Doc. 6, Ex. 8.  On July 29, 2013, the appellate court sua sponte dismissed the appeal for being improperly filed. Doc. 6, Ex. 9.  On August 8, 2013, through new counsel, Mr. Roth filed a notice of appeal and a motion for leave to file a delayed appeal, which the court granted. Doc. 6, Ex. 10-12.  Mr. Roth later filed a pro se motion to stay proceedings until the state appellate court could rule on a motion to withdraw as appellate counsel, which was denied. Doc. 6, Ex. 13-14. Subsequently, Mr. Roth's counsel filed a motion to withdraw and to appoint new counsel, which was granted.  The case was remanded to the trial court to appoint appellate counsel. Doc. 6, Ex. 15-16. The trial court then appointed new counsel for Mr. Roth on appeal.  Doc. 6, Ex. 17.

Petitioner raised the following assignments of error on appeal:

1.  THE STATE FAILED TO OFFER SUFFICIENT EVIDENCE TO CONVICT THE APPELLANT OF AGGRAVATED ROBBERY, THE GUN SPECIFICATION, FELONIOUS ASSAULT AND THE THEFT CHARGES THUS VIOLATING APPELLANT'S RIGHT TO DUE PROCESS PURSUANT TO THE FIFTH AMENDMENT TO THE FEDERAL CONSTITUTION MADE APPLICABLE TO THE STATES BY THE FOURTEENTH.

2.  THE JUDGMENT OF CONVICTION FOR FELONIOUS ASSAULT, AGGRAVATED ROBBERY WITH A GUN SPECIFICATION, AND THEFT IS AGAINST THE WEIGHT OF THE EVIDENCE.

Doc 6, Ex. 18. On September 25, 2014, the court affirmed Mr. Roth's convictions and sentences. Doc. 6, Ex. 20; State v. Roth, 2014 WL 4802841 (Muskingum Cty. Sept. 25, 2014).

**C. Application for Release on Bail**

Mr. Roth filed a pro se application for release on bail with the Muskingum County Court of Common Pleas on April 3, 2014, which was denied on April 9, 2014. Doc. 6, Ex. 24-25.

**D. Ohio Supreme Court**

On November 7, 2014, Mr. Roth filed a timely pro se notice of appeal to the Ohio Supreme Court, raising the following propositions of law in his memorandum in support of jurisdiction (Doc. 6, Ex. 22):

1.   Are the requirements of Crim. Rule 29, mandatory or discretionary upon the trial court.

2.   Does a defendant in the state of Ohio have a right to a fair trial as guaranteed by the United States Constitution.

Doc. 6, Ex. 22.   The State did not file a responsive brief, but on April 8, 2015, the Ohio Supreme Court declined to accept jurisdiction.  Doc. 6, Ex. 23.  Mr. Roth did not petition the United States Supreme Court for a writ of certioari.

**E. Rule 26(B) Application for Re-Opening of Appeal**

On June 12, 2015, Mr. Roth filed a pro se application pursuant to Ohio App.R. 26(B) to re-open his appeal on the grounds of ineffective assistance of appellate counsel.

Doc. 6, Ex. 26. He alleged that counsel was ineffective for failing to raise the following claims:

1.    APPELLANT WAS DEPRIVED OF HIS RIGHT TO BE PRESENT AND THE PRESENCE AND ASSISTANCE OF HIS COUNSEL DURING A CRITICAL STAGE OF HIS JURY TRIAL, AND HIS RIGHT TO DUE PROCESS AND A FUNDAMENTALLY FAIR TRIAL AS REQUIRED BY THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND CRIMINAL RULE 43(a0. (T. 950-50) [sic].

2.    THE APPELLANT'S TRIAL COUNSEL FAILED TO OBJECT TO THE COURT'S ALLOWING THE COMPLICITY INSTRUCTION IN THE JURY INSTRUCTIONS, VIOLATED THE DEFENDANT'S RIGHT TO DUE PROCESS.

3.    APPELLANT'S RIGHT TO DUE PROCESS WAS VIOLATED WHEN PROSECUTOR FAILED TO CONVICT APPELLANT OF EVERY ELEMENT OF THE OFFENSE.

On November 5, 2015, the appellate court denied Mr. Roth's application to re-open his appeal due to untimeliness. Doc. 6, Ex. 27. Roth did not appeal that decision to the Ohio Supreme Court.

## F.  Federal Habeas

On March 1, 2016, Mr. Roth filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 (Doc. 1), raising the following grounds for relief:

1.    The state failed to offer sufficient evidence to convict the appellant of aggravated robbery, the gun specification, felonious assault and the theft charges thus violating appellant's right to due process pursuant to the Fifth Amendment to the Federal Constitution made applicable to the States by the Fourteenth.

2.    Appellant was deprived of his right to be present and the presence and assistance of his counsel during a critical stage of his jury trial, and his right to due process and a fundamentally fair trial as

required by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Criminal Rule 43(a).

<u>Supporting Facts</u>: During deliberations, the jury sent out multiple questions to the trial court, jurors were returned and questions answered. Although counsel was present during the procedure, appellant was not. The defendant may waive, in writing or on the record the defendant's right to be physically present under these rules with leave of court. Criminal Rule 43(a)(3). Nowhere on the record did the defendant waive his own right prior to the procedure at hand.

3       The appellant's trial counsel failed to object to the courts [sic] allowing the complicity instruction in the jury instructions, violating the defendant's right to due process.

4.      Appellant's right to due process was violated when prosecutor failed to convict appellant of every element of the offense.

<u>Supporting Facts</u>: Appellant, after deliberation from the jury was convicted of aggravated robbery (2911.01 (a)(1)), but found not guilty of any firearm specification, which is the essential element of aggravated robbery under section (2911.01 (a) (1)). Therefore, as in *State v Roscoe* 2013-Ohio-3617, this verdict should be reversed.

## II.  Legal Standards

### A.  Procedural Default

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. §2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an

avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. Id.; Anderson v. Harless, 459 U.S. 4, 6, 103 (1982) (per curiam) (citing Picard v. Connor, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas...." Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." Hicks v. Straub, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting Pillette v. Foltz, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. In the words used by the Supreme Court in Wainwright v. Sykes, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state

procedure" also cannot be resolved on their merits in a federal habeas case-that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." Id. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. Id. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. Id. Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. Id. This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. Leroy v. Marshall, 757 F.2d 94 (6th Cir. 1985).

Turning to the fourth part of the Maupin analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. Edwards v. Carpenter, 529 U.S. 446, 453 (2000). In order to

constitute cause, an ineffective assistance of counsel claim generally must " 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.' " Edwards, 529 U.S. at 452 (quoting Murray v. Carrier, 477 U.S. 478, 479 (1986)). That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." Burroughs v. Makowski, 411 F.3d 665, 668 (6th Cir. 2005). Or, if procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." Edwards v. Carpenter, 529 U.S. 446, 450–51 (2000). The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in Coleman: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in O'Sullivan v. Boerckel, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to " 'protect the integrity' of the federal exhaustion rule." Id., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting id., at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by " 'letting the time run' " so that state remedies were no longer available. Id., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances,

though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].' " Id., at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

Edwards, 529 U.S. at 452–53.

If, after considering all four factors of the Maupin test, the court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." Hodges v. Colson, 727 F.3d 517, 530 (6th Cir. 2013) (citing Murray v. Carrier, 477 U.S. 478, 495–96 (1986)).

**B. Merits review**

The provisions of the Antiterrorism and Effective Death Penalty Act, Pub.L. 104–132, 110 Stat. 1214 ("AEDPA") govern the scope of this Court's review. See Penry v. Johnson, 532 U.S. 782, 791 (2001); Wilson v. Parker, 515 F.3d 682, 691 (6th Cir.2008). AEDPA imposes a "highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997), and "demands that state-court decisions be given the benefit of the doubt," Woodford v. Visciotti, 537 U.S. 19, 24,(2002) (per curiam).

When the claims presented in a habeas corpus petition have been presented to and decided by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding

In applying this statute, the Supreme Court has held that "[t]he focus... is on whether the state court's application of clearly established federal law is objectively unreasonable... an unreasonable application is different from an incorrect one." To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Bobby v. Dixon, ___ U.S. ____, ____, 132 S.Ct. 26, 27 (2011), quoting Harrington v. Richter, 562 U.S. 86, 101-103 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Harrington

v. Richter, 562 U.S. at 102 (quoting Jackson v. Virginia, 443 U.S. 307, 332, n. 50 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id., quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

In situations where the state courts have not adjudicated the merits of a claim, a federal habeas court should review a Petitioner's claim de novo. Howard v. Bouchard, 405 U.S. 459, 467 (6th Cir. 2005) ("Where the state court has not addressed or resolved claims based on federal law, most courts, including this one, have held that the decision is not an 'adjudication on the merits.' Thus, a federal habeas court reviews such unaddressed claims de novo."); McKenzie v. Smith, 326 F.3d 721, 727 (6th Cir. 2003) (reviewing habeas Petitioner's sufficiency-of-the-evidence claim de novo where the state courts had considered the admissibility of the evidence but not the sufficiency of the evidence); Pennington v. Jones, 2006 WL 322474, at *2 (E.D. Mich. Feb.10, 2006) (reviewing habeas Petitioner's claim de novo where he raised it for the first time in his petition).

Questions of state law are not reviewable in a federal habeas action. See Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (citations and internal quotation marks omitted). Petitioner instead must show that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28

13

U.S.C. § 2254(a);  see also Estelle, 502 U.S. at 68 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").  Accordingly, the Court of Appeals has held that "[e]rrors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." Kelly v. Withrow, 25 F.3d 363, 370 (6th Cir. 1994).

### III.  Discussion

Respondent argues that all Mr. Roth's grounds for relief have been procedurally defaulted due to his failure to exhaust state remedies and, alternatively, the grounds for relief are without merit.  Mr. Roth concedes in his habeas petition that he did not raise grounds two through four in his direct appeal, but asserts that this should be excused due to ineffective assistance of trial counsel.  The Court will first address these grounds for relief.

### A.  Grounds Two through Four

In his second, third, and fourth grounds for relief Petitioner asserts that his constitutional rights to due process and/or a fair trial were violated because: (a) although his counsel was present, he was not permitted to be present during the jury deliberations, during which the jurors were returned to the courtroom and permitted to pose multiple questions; (b) his trial counsel failed to object to the complicity instruction given to the jury; and (c) he was convicted of aggravated robbery, but was found not guilty of the firearm specification, which is an essential element of aggravated robbery

14

under O.R.C. §2911.01(a)(1).  Mr. Roth argues that these claims were not raised due to ineffective assistance of appellate counsel.  The Court will first consider whether his claim for ineffective assistance of appellate counsel was procedurally defaulted, because whether procedural default of any other claim can be excused ultimately depends on whether the claim for ineffective assistance of appellate counsel was procedurally defaulted  and whether there was cause and prejudice to excuse such default.  See Edwards, 529 U.S. at 452–53.

It is clear that, as to the ineffective assistance of appellate counsel claim, the first three parts of the Maupin procedural default analysis have been satisfied.  Mr. Roth raised the ineffective assistance of appellate counsel claims in his Rule 26(B) application for reopening, which is the procedural vehicle under Ohio law for raising an ineffective assistance of appellate counsel claim. See, e.g., Landrum v. Mitchell, 625 F.3d 905, 916 (6th Cir.2010) (citing Ohio App. R. 26(B)). When he did so, the state appellate court issued a judgment entry overruling petitioner's application for reopening, ruling that petitioner had "failed to establish good cause for untimely filing of the application to reopen." Doc. 6-1, Ex. 27.  The Court of Appeals has consistently held that "an untimely Rule 26(B) application is an adequate and independent state ground that results in a claim being procedurally defaulted." Baker v. Bradshaw, 495 F. App'x 560, 566 (6th Cir. 2012) (citing Monzo v. Edwards, 281 F.3d 568, 577–78 (6th Cir. 2002) and Gross v. Warden, 426 Fed.Appx. 349, 359 (6th Cir. 2011)). (Doc. # 16 at 15).

Unfortunately for Mr. Roth, he did not appeal the denial of his Rule 26(B) motion to the Ohio Supreme Court, and therefore failed to exhaust his state remedies for the ineffective assistance of appellate counsel claim.  Although Mr. Roth does not raise this argument, even if appellate counsel failed to inform him of Rule 26(B)'s ninety-day limitations period, this "cannot constitute cause" because "Rule 26(B) is a collateral proceeding to which no right to assistance of counsel attaches." Rideau v. Russell, 342 Fed.Appx. 998, 1003 n. 2 (6th Cir. Aug. 24, 2009) (citing Scuba v. Brigano, 527 F.3d at 489 (6th Cir. 2007.  It is clear both Mr. Roth's failure timely to pursue relief under Rule 26(B), and the failure to appeal the denial of that motion, qualify as procedural defaults. See Tolliver v. Sheets, 594 F.3d 900 (6th Cir.2010) (failure timely to file a Rule 26(B) motion is a procedural default); Amell v. Smith, 2010 WL 2010 WL 5283295 (N.D. Ohio Nov 23, 2010), adopted and affirmed 2010 WL 5288186 (N.D. Ohio Dec 17, 2010) (failure to appeal the denial of a Rule 26(B) motion is a procedural default).  Mr. Roth has offered no justification for this default. Therefore, the Court concludes that any ineffective assistance of appellate counsel claim has been procedurally defaulted.  That means, in turn, that cause does not exist to excuse the default of grounds two through four. Moreover, Mr. Roth has not demonstrated that this is an "extraordinary case, where a constitutional violation has probably resulted in the conviction of someone who is actually innocent." See Murray, supra, at 496.  For the reasons discussed above, it will be recommended that grounds two through four of the petition be denied as procedurally defaulted.

16

## B.  Ground One- Sufficiency of the Evidence

Mr. Roth's first ground for relief challenges the sufficiency of the evidence presented in support of his convictions.  Respondent first argues that Mr. Roth failed to exhaust his state remedies because he did not raise an identical sufficiency of the evidence claim in his memorandum in support of jurisdiction to the Ohio Supreme Court.  The Court notes that the memorandum in support of jurisdiction was filed by Mr. Roth pro se, and the proposition of law viewed on its own only raised the question as to whether the trial court erred in denying his counsel's motion for acquittal under Crim. R. 29.  However, a review of Mr. Roth's memorandum shows that he argued that the conviction was against the weight of the evidence.  Although Mr. Roth misses certain aspects of the argument that were raised on direct appeal, he does raise the proposition of law under the same general theory in his pro se memorandum in support of jurisdiction to the Ohio Supreme Court as was argued in his appellate brief.  Thus, the Court will consider this ground for relief to be exhausted and consider it on its merits.

A challenge to the sufficiency of the evidence, when made in a habeas corpus petition subject to the AEDPA, must meet an exacting standard. As this Court explained in Lynch v. Hudson, 2011 WL 4537890, *81–82 (S.D. Ohio Sept. 28, 2011):

> In Jackson v. Virginia [443 U.S. 307 (1979) ], the United States Supreme Court held that as a matter of fundamental due process, a criminal conviction cannot stand unless each essential element is proven beyond a reasonable doubt. 443 U.S. at 316. The Supreme Court explained that when reviewing a challenge to the constitutional sufficiency of the

evidence supporting a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. The Supreme Court cautioned, with respect to the role of a reviewing court, that "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. Thus, after reviewing the evidence in a light most favorable to the prosecution and respecting the trier of fact's role in determining witnesses' credibility and weighing the evidence, a federal court must grant habeas corpus relief "if it is found that upon the record evidence at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Id. at 324.

It is important that when reviewing a sufficiency of the evidence challenge the Court "do[es] not reweigh the evidence, re-evaluate the credibility of the witnesses, or substitute [its] judgment for that of the jury." Brown v. Konteh, 567 F.3d 191, 205 (6th Cir.2009). If the record contains credible, competent evidence enabling a rational jury to find each essential element beyond a reasonable doubt, then Petitioner's challenge to the sufficiency of the evidence fails. Cf. Matthews v. Abramajtys, 319 F.3d 780, 788–89 (6th Cir.2003) ("The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim.").

As the Court of Appeals has explained, "[i]n a habeas proceeding, however, we cannot simply conduct de novo review of the state court's application of the [Jackson v. Virginia] rule, but must review its sufficiency-of-the-evidence decision under the highly deferential standard of the AEDPA." Saxton v. Sheets, 547 F.3d 597, 602 (6th Cir.2008).

In Tucker v. Palmer, 541 F.3d 652 (6th Cir.2008), the Court of Appeals explained in more detail:

> Accordingly, the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by Jackson; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by the AEDPA.

Id. at 656. See also Parker v. Renico, 506 F.3d 444, 448 (6th Cir.2007); Nash v. Eberlin, 258 F. App'x 761, 765 (6th Cir. 2007). This Court recognizes, however, that in spite of the AEDPA, "it must distinguish reasonable speculation from sufficient evidence when reviewing a state court's application of Jackson." Arthurs v. Warden, Warren Correctional Institution, 2012 WL 995395, *9 (S.D. Ohio March 23, 2012) (internal quotations omitted).

Mr. Roth challenges the sufficiency of the evidence for his convictions.  The Court first notes that, despite his reference to his convictions for those crimes in his habeas petition, Mr. Roth was not convicted of felonious assault or any gun specifications.  Doc. 6, Ex. 5.  He was convicted only of two counts of theft and one count of aggravated robbery.   Mr. Roth's theft convictions were pursuant to O.R.C. §2913.02(A)(1), which provides as follows:

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
>
> (1) Without the consent of the owner or person authorized to give consent

Mr. Roth argues that the trial testimony failed to establish key elements of the crimes for which he was convicted.

With respect to the theft convictions, he argues that the prosecution failed to show that Mr. Roth stole the victim's wallet or any cash that it contained.   Mr. Roth cites testimony by Jeffery Body, the victim, which he says demonstrates that the state failed to prove that Mr. Roth stole Mr. Body's wallet:

> Q:     "And did you give them your wallet?"
>
> A:     "Yes. Well, I don't know if I gave it to them or if I threw it. I pulled my wallet– I was screaming: Here's my wallet.  They wanted my keys.  I'm like: Here, take my wallet, there's money in it."

Doc 6-3, Tr. at 157.

\* \* \*

> A:     "...I don't know if it [the wallet] fell.  I don't know if I gave that to them."

Doc. 6-3, Tr. at 180.

Mr. Roth points out that the wallet was found at the scene of the crime after the incident had occurred by a man who had never seen Mr. Roth before. Doc. 6-3, Tr. At 142.  This, he avers, shows that the state failed to show that the wallet was stolen or just dropped at the scene.  Mr. Roth also argues that the state failed to show that he stole money from the wallet because he had none on him at the time of his arrest.

As was described in the trial testimony, Mr. Body testified that his wallet was stolen by one of the masked men during the January 10, 2013, incident.  Despite Mr. Body's statements relied on by Mr. Roth, he was found to have been at the residence

during the incident involving Mr. Body, and the money in the wallet was missing when it was eventually found. The Court is unpersuaded by Mr. Roth's argument that the state failed to meet an essential element of theft because the cash was not found with Mr. Roth at the time of his arrest. Moreover, even though Mr. Body admitted that his wallet may have fallen instead of being physically taken off of him, there is sufficient evidence to show that the wallet was removed from his possession without his consent, whether or not it fell or was physically taken from his person. While this conviction may turn on circumstantial evidence, the Supreme Court of Ohio has held that "[a] conviction can be sustained based on circumstantial evidence alone." State v. Franklin, 62 Ohio St.3d 118, 124 (1991), citing State v. Nicely, 39 Ohio St.3d 147, 154-55. (1988). Based on the evidence presented and viewed in the light most favorable to the prosecution, a reasonable trier of fact could have found the essential elements of theft proven beyond a reasonable doubt.

Mr. Roth was originally charged with two counts of aggravated robbery, one pursuant to O.R.C. §2911.01(A)(1), and one pursuant to §2911.01(A)(3). The statutes read, in pertinent part, as follows:

> (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

> (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;

> * * *

21

(3) Inflict, or attempt to inflict, serious physical harm on another.

Mr. Roth argues that the state failed to show that he beat Mr. Body because when Mr. Body received his injuries he was outside of the residence at 801 Canal Street, but co-defendant Amy Johnson testified as follows:

> Q:   "Now Jeff's in the street and someone is beating on him, does anybody come to talk to you or ask you for anything?"
>
> A:   "Yes."
>
> Q:   "And who was that?"
>
> A.   "Joey."

Doc. 6-4, Tr. at 238-239; and co-defendant Chad Bocook also testified that Mr. Roth "did not beat on Jeff outside." Id. at 210.

Mr. Roth was found guilty of aggravated robbery in violation of O.R.C. §2911.01(A)(1), but not guilty of O.R.C. §2911.01(A)(3). Thus, whether or not Mr. Roth was found to have physically beaten Mr. Body is irrelevant to his conviction under §2911.01(A)(1). In fact, because he was found not guilty of §2911.01(A)(3) it is logical to infer that the jury did not find that Mr. Roth participated in beating Mr. Body.

Mr. Roth argues that the state failed to show that he was in possession of a gun, and thus failed to meet an essential element of §2911.01(A)(1). He references the following trial testimony of Mr. Bocook in support of relief:

> Q:   "Do you know if Joey had a gun?"
>
> A:   "No, I can't say whether or not he did for sure or not."

Doc. 6-4, Tr. 206. In addition, Ms. Johnson testified:

> Q:     "You didn't see whether they did or did not have a gun?"
>
> A:     "No."

Doc. 6-4, Tr. 236.  However, Ms. Johnson immediately goes on to testify as follows:

> Q:     "But you did see that they were representing they had a gun?"
>
> A.     "Yes."

Id.

As described above, the testimony established that on the night of January 10, 2013, four men with masks burst into the bedroom where Mr. Body was located, and that Mr. Body tried to run, but at least one of the masked men had a gun.  State v. Roth, 2014 WL 4802841, ¶3.  Mr. Body was then beaten and his car and cash from his wallet were stolen.  Mr. Roth argues that no evidence was presented to show that he had a gun or knowledge that there was a gun present during the crime.  However, the jury in Mr. Roth's trial was instructed on complicity, as detailed below.  The jury did not need to find direct possession of or knowledge of the gun, but whether Mr. Roth "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal."  State v. Johnson, 93 Ohio St.3d 240, 243 (2001).  Criminal intent "may be inferred from the circumstances surrounding the crime."  Id. Where direct evidence of use of a deadly weapon is not obtainable, proper inferences may be drawn from presentation of other facts. State v. Vasquez, 18 Ohio App.3d 92 (Lucas Cty. 1984).

23

It is not this Court's role in a habeas review to re-evaluate fact finding and credibility determinations made by the jury.  See, Brown, supra at 205.   The jury heard not only the testimony raised by Mr. Roth in his petition, but heard other witnesses and considered all the evidence presented at trial as a whole.  The jury's determination that the evidence was sufficient to support the convictions was not unreasonable, and that conclusion precludes this Court from granting relief.

Applying the second level of deference, the Court must defer to the appellate court's reasoning in denying relief on this issue on direct appeal.  In its opinion affirming the judgment, the court quoted a portion of the trial court's jury instructions, and then considered the sufficiency of the evidence claim:

> At trial, the trial court instructed the jury as to complicity pursuant to the statute:
>
> {¶ 32} "Complicity. No person acting with the kind of culpability required for the commission of an offense shall do any of the following: Aid or abet another in committing the offense. Whoever violates this section is guilty of complicity in the commission of an offense and shall be prosecuted and punished as if he were a principal offender.
>
> {¶ 33} Aided or abetted means supported, assisted, encouraged, cooperated with, advised or incited.
>
> {¶ 34} You have heard the testimony from Amy Johnson and Chad Bocook who pleaded guilty to the same crimes charged in this case and both are said to be accomplices. An accomplice is one who purpose Lee [sic] knowingly assists or joins another in the commission of a crime. Whether Amy Johnson and Chad Bocook were both an accomplice and the wait [sic] to give his or her testimony are matters for you to determine from all the facts and circumstances in evidence.

{¶ 35} The testimony of an accomplice does not become inadmissible because of his or her complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his or her credibility and make his or her testimony subject to grave suspicion and require that it be weighed with great caution.

{¶ 36} It is for you, as jurors, in the light of all of the facts presented to you from the witness stand to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."

{¶ 37} The victim testified he was beaten inside and outside the residence, and his car and wallet were stolen. In addition, the corroborating testimony of Amy Johnson and Chad Bocook, both codefendants of Appellant, testified as to the planning and commission of the offense, including the indication of a firearm during the offense.

{¶ 38} Upon review of the evidence, including the testimony of the accomplices, we find, Appellant's convictions are not against the manifest weight nor the sufficiency of the evidence, as Appellant acted in complicity and aided and abetted the commission of the offenses.

Roth, 2014 WL 4802841, *3-4.

Given the highly deferential approach required of this Court under the AEDPA to the findings of the jury and appellate court's reasoned decision, the Court concludes that Mr. Roth's first ground for relief is without merit.

## IV.  Conclusion

For the foregoing reasons, it is **RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED** and that this case be **DISMISSED**.

## V.  Procedure on Objections

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C.

§636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.

The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge